**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

SALVADOR RAMIREZ,                            No. 2:15-CV-1043-CMK

        Plaintiff,

  vs.                                                 MEMORANDUM OPINION AND ORDER

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

        Plaintiff, who is proceeding with retained counsel, brings this action under

42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security.

Pursuant to the written consent of all parties, this case is before the undersigned as the presiding

judge for all purposes, including entry of final judgment.  See 28 U.S.C. § 636(c).  Pending

before the court are plaintiff's motion for summary judgment (Doc. 15) and defendant's cross-

motion for summary judgment (Doc. 16).

## I.  PROCEDURAL HISTORY

        Plaintiff applied for social security benefits on February 17, 2012.[1]  In the

---

[1]    A prior application for benefits was denied.

1

1    application, plaintiff claims that disability began on December 31, 1990.   Plaintiff's claim was

2    initially denied.  Following denial of reconsideration, plaintiff requested an administrative

3    hearing, which was held on July 17, 2013, before Administrative Law Judge ("ALJ") Mark C.

4    Ramsey.   In a January 6, 2014, decision, the ALJ concluded that plaintiff is not disabled based

5    on the following relevant findings:

6         1.    The claimant has the following severe impairment(s): degenerative joint
               disease and polysubstance abuse, unchanged from the prior decision;

7
          2.    The claimant does not have an impairment or combination of impairments
8               that meets or medically equals an impairment listed in the regulations,
                unchanged from the prior decision;

9
          3.    The claimant has the following residual functional capacity: the claimant
10              can perform simple, repetitive, medium work, unchanged from the prior
                decision; and

11
          4.    The claimant can perform past relevant work, unchanged from the prior
12              decision.

13   After the Appeals Council declined review on March 25, 3015, this appeal followed.

14

15                          **II.  STANDARD OF REVIEW**

16            The court reviews the Commissioner's final decision to determine whether it is:

17   (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

18   whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

19   more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

20   (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to

21   support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

22   including both the evidence that supports and detracts from the Commissioner's conclusion, must

23   be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

24   v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

25   decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

26   Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

findings, or if there is conflicting evidence supporting a particular finding, the finding of the

Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

Therefore, where the evidence is susceptible to more than one rational interpretation, one of

which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

Cir. 1988).

### III.  DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ improperly

concluded that plaintiff's mental impairment fails to meet or medically equal Listing 12.05;

(2) the ALJ failed to develop the record; (3) the ALJ failed to provide clear and convincing

reasons for rejecting treating and examining medical source opinions; and (4) the ALJ erred by

failing to obtain vocational expert testimony.[2]

**A.**    **Listing 12.05**

With respect to Listing 12.05, the ALJ stated:

> . . .[A]lthough the claimant only achieved a full scale IQ of 59, Listing
> 12.05C requires a finding that the individual has mental retardation with
> deficits in adaptive functioning initially manifested prior to age 22.  In this
> respect, the record is devoid of any objective evidence which can relate
> this score prior to age 22.  The claimant's one-time low IQ score is best
> explained by other diagnoses in the record, including a long history of
> drug and alcohol abuse.

Because plaintiff failed to present any evidence of deficits in adaptive functioning initially

manifested prior to age 22, as specified in the introductory paragraph to Listing 12.05, the ALJ

concluded that this listing was not met.

Citing out-of-circuit authority, plaintiff argues:

---

[2]        Plaintiff does not challenge the ALJ's adverse credibility finding.

3

1            The ALJ noted that "the record is devoid of any objective evidence
which can relate this score prior to age 22."  However, in *Hodges v.*
2         *Barnhart*, 276 F.3d 1265 (11th Cir. 2001), the court held that "absent
evidence of a sudden trauma that can cause retardation, the IQ tests create
3         a rebuttable presumption of a fairly consistent IQ" throughout life.

4 According to plaintiff, he need not present any evidence of deficits in adaptive functioning

5 initially manifested prior to age 22.

6            In light of the plain language of the regulations, the court does not agree.

7 Specifically, the introduction to the listings for mental disorders clearly states with respect to

8 Listing 12.05 as follows:

9            The structure of the listing for intellectual disability (12.05) is
different from that of the other mental disorders listings.  Listing 12.05
10         contains an introductory paragraph with the diagnostic description for
intellectual disability.  It also contains four sets of criteria (paragraphs A
11         through D).  If your impairment satisfies the diagnostic description in the
introductory paragraph ***and*** any one of the four sets of criteria, we will find
12         that your impairment meets the listing."

13            20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(A) (emphasis added).

14 Plaintiff has not presented any evidence satisfying the introductory paragraph.

15       **B.**    **Evaluation of the Medical Opinions**

16            The weight given to medical opinions depends in part on whether they are

17 proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d

18 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

19 professional, who has a greater opportunity to know and observe the patient as an individual,

20 than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285

21 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given

22 to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4

23 (9th Cir. 1990).

24            In addition to considering its source, to evaluate whether the Commissioner

25 properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are

26 in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

According to plaintiff, "[t]he ALJ ignored the records of plaintiff's treating doctors at Guesthouse, his mental heath provider, which [sic] noted his cognitive processes were impaired."  Plaintiff also argues that the ALJ mischaracterized the records from treating sources at The Effort Clinic and El Hogar.  Next, plaintiff argues that the ALJ erred in rejecting the opinion of the consultative examining physician, Dr. Sanford Selcon, M.D., regarding plaintiff's mental impairment.  Finally, plaintiff asserts that the ALJ erred by misstating the opinion of consultative examining psychologist, Dr. Troy Ewing, Psy.D.

1.      The Effort Clinic

Regarding records from The Effort Clinic, the ALJ stated:

In February 2013, the claimant was seen as a new patient and did not have any important complaints.  In fact, he admitted that he exercise[s] on a daily basis.  The following month, although he reported some foot pain, treating noted do not contain any significant objective findings (Exhibits C-20F and C-21F).

* * *

In June 2013, the claimant did not allege any ongoing symptoms.  In July 2013, in connection with a general assistance claim, and without providing any specific restrictions, a physician noted that the claimant has severe limitations of walking, standing, climbing, and stooping (Exhibit C-18F). Nonetheless, treating notes from this physician do not contain any objective clinical findings which support this assessment.  In fact, this physician's own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact seriously limited and often acknowledge that the claimant does not have any serious complaints.  Moreover, while this physician does have a treating relationship with the claimant, the treatment history is extremely brief.  Therefore, this opinion is given little weight.

The claimant was seen in September 2013 with heel and low back pain, and headaches.  Nonetheless, although there was some tenderness over the spine, treating records that month do no reveal any important work related findings (Exhibit C-21F).

* * *

. . .In September 2013, affect and mood were described as appropriate, and the claimant was fully oriented (Exhibit C-21F).

According to plaintiff:

Again, the ALJ mischaracterizes the records of the doctor.  The records of the Effort do not acknowledge that the claimant does not have any serious complaints, they note repeatedly that plaintiff suffers from severe osteoarthritis and chronic pain and prescribe norco and cyclobenzaprine.  They note that his medical history was reviewed.  (TR 1059-1086).  The ALJ criticizes the doctor in noting that his own report fails to reveal clinical and lab findings.  This ignores that the doctor's physical examination and opinion itself is a clinical finding.

The only evidence of a medical opinion from doctors at The Effort Clinic is a July 11, 2013, work evaluation form completed by Ian Johnson, M.D.  Dr. Johnson opined that plaintiff has "severe limitation" in his ability to walk, stand, climb, and stoop due to osteoarthritis.  The doctor noted that plaintiff takes medication only occasionally, and that

1  medication has a very limited effect.  Dr. Johnson did not note any objective clinical or

2  laboratory findings to support his July 11, 2013, opinion.

3      The court has carefully examined the records from The Effort Clinic and finds, as

4  did the ALJ, that Dr. Johnson's opinion is indeed unsupported by any remarkable objective

5  findings.  In fact, treatment notes from the same day Dr. Johnson completed the work evaluation

6  form indicate that plaintiff "has no acute complaints."  On physical examination, the notes

7  indicate that plaintiff is "well developed."  Treatment notes from June 2013 – one month before

8  Dr. Johnson completed the work evaluation form – indicate that plaintiff had no acute complaints

9  and examination revealed no remarkable findings.  Similarly, objective findings on examination

10  conducted in March 2013 were unremarkable.  In February 2013 plaintiff had no acute

11  complaints and physical examination was unremarkable.  Treatment records from The Effort

12  Clinic for the time period following Dr. Johnson's completion of the work evaluation form in

13  July 2013 are likewise unremarkable in terms of objective clinical findings.

14      Given the lack of objective clinical findings to support Dr. Johnson's July 2013

15  opinion that plaintiff has severe limitations, the ALJ did not err in affording this opinion little to

16  no weight.

17      2.    Guesthouse

18  As to records from Guesthouse, the ALJ stated:

19      In February 2012, treating notes reflect that the claimant is often non-
         compliant with his medicinal regime.  Nevertheless, mental status
20      examination that month was benign, and the claimant was described as
         pleasant and cooperative.  However, the following month, the claimant
21      reported suicidal ideation and auditory hallucinations.  Although the
         claimant was depressed, mental status examination did not reflect any
22      serious objective findings.  In April 2012, the claimant indicated that he is
         taking his medication and reported an improvement in his symptoms
23      (Exhibit C-13F).

24  Plaintiff contends that the ALJ hearing decision ignores records from Guesthouse.

25      Given the ALJ's discussion of these records, the court cannot agree.  In any event,

26

7

the court has reviewed the records from Guesthouse and finds no evidence of any doctor expressing an opinion regarding plaintiff's ability to perform work-related activities.  Notably, in his summary of the evidence, plaintiff does not point to any such opinions from doctors at Guesthouse, merely stating: "They noted his cognitive process was impaired."  Plaintiff does not identify any specific medical opinion, however, as to the level of such impairment or how such impairment affects plaintiff's ability to work.

                3.     El Hogar

Regarding El Hogar, the ALJ noted:

> In May 2013, the claimant under[went] initial evaluation at a community mental health center and was approved for a course of treatment. Nonetheless, related office records that month, and the following month, do not show that mental status testing was conducted (Exhibit C-19F).

Plaintiff argues: "The ALJ did not provide specific and legitimate reasons for rejecting the treating doctors at the El Hogar's opinion that plaintiff has Schizoaffective Disorder to the extent that he had impairment in reality testing or communications."  As with records from Guesthouse, the court finds no medical opinion regarding plaintiff's ability to work, and plaintiff points to no such opinions in his summary of the evidence from this source.

                4.     Dr. Selcon

Regarding Dr. Selcon, the ALJ stated:

> The record also reflects that in May 2012, the claimant underwent consultative evaluation that was essentially normal, and the examining physician noted that the claimant is able to perform medium work (Exhibit C-6F).  Although this physician also indicated that the "employability" of the claimant would be difficult because of his cognitive impairment, the Administrative Law Judge rejects this opinion.  Clearly, this physician, who is an internist, offered an opinion that appears to rest at least in part on an assessment of a psychiatric impairment outside his area of expertise. Moreover, this psychiatric opinion contrasts sharply with the other evidence of record, including evidence from mental health professionals, which renders it less persuasive.

Plaintiff argues that the ALJ erred with respect to Dr. Selcon's opinion that plaintiff's

1  "employability" would be "difficult" due to cognitive impairment. The court does not agree. As

2  the ALJ noted, Dr. Selcon was consulted to perform an internal medicine evaluation. The

3  doctor's report reveals no findings on mental status examination because the doctor performed

4  no such examination. In fact, the only reference in Dr. Selcon's report relating to mental

5  impairment is "History of significant mental health issues," indicating that the doctor based his

6  opinion in this regard on plaintiff's subjective statements. Therefore, the ALJ did not err in

7  noting that Dr. Selcon's opinion with respect to plaintiff's mental impairment is unsupported by

8  objective findings and entitled to little to no weight.

9              5.    Dr. Ewing

10             As to Dr. Ewing, the ALJ stated:

11             The record also reflects that the claimant underwent consultative
               psychological evaluation in May 2012. The claimant alleged a long
12             history of suicide ideation, with multiple psychiatric admissions. He also
               reported that he has not used alcohol or illegal drugs during the past 14
13             years. Upon mental status examination, mood was mildly depressed and
               affect was slightly restricted. Attention and concentration were described
14             as mildly impaired. The claimant only achieved a full scale IQ of 59 upon
               intelligence testing. Nonetheless, the examiner suggested that the
15             claimant's ability to perform the mental demands of work is no more than
               moderately impaired (Exhibit C-5F).
16

17  Plaintiff argues that the ALJ misstated the doctor's opinion.

18             The court agrees. Though the ALJ stated that Dr. Ewing opined to no more than

19  moderate impairments, Dr. Ewing in fact stated that plaintiff "demonstrated moderate to

20  significant difficulty with pace and persistence." Dr. Ewing also opined that plaintiff is "likely to

21  have significant difficulty adapting to changes in routine work-related settings." Additionally,

22  contrary to the ALJ's statement that attention and concentration were "described as mildly

23  impaired," Dr. Ewing noted that plaintiff "had moderate difficulty maintaining attention and

24  concentration for the duration of the evaluation." Finally, the court notes that the ALJ made no

25  account for Dr. Ewing's opinion that plaintiff needs "continuous prompts to stay on task during

26  any workday."

Citing page 470 of the administrative record, which is the last page of Dr. Ewing's report, defendant argues that the doctor's "opinion was based upon Plaintiff's psychiatric history and his response to psychological testing, and both sources of information were unreliable." The doctor, however, did not state that plaintiff's history or testing results were unreliable.

The court will remand the matter for proper consideration of Dr. Ewing's opinions.[3]

## IV.  CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1.      Plaintiff's motion for summary judgment (Doc. 15) is granted;

2.      Defendant's cross motion for summary judgment (Doc. 16) is denied;

3.      This matter is remanded for further proceedings consistent with this order; and

4.      The Clerk of the Court is directed to enter judgment and close this file.


DATED:  September 29, 2016

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

---

[3]      Given the ALJ's error in evaluating the medical opinions, the court needs not address plaintiff's remaining arguments.